Clerk
District Court

MAR 1 7 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1  Kristin St. Peter
   Assistant Attorney General
2  Office of the Attorney General-Civil Division
   2nd Floor, Juan A. Sablan Memorial Bldg.
3  Caller Box 10007
   Saipan, MP 96950
4  Telephone: 664-2341
   Fax: 664-2349
5  Attorney for Richard T. Lizama and Acting Director of Immigration Mel Grey

6              **IN THE UNITED STATES DISTRICT COURT**
               **FOR THE NORTHERN MARIANA ISLANDS**
7

8  AUTO MARINE, INC., ROLANDO SENORAN,          )  CIVIL ACTION NO. 05-0042
9  BENJAMIN T. SANTOS, AUGUSTO SANTOS           )
   and NORMANDY SANTOS                          )
10                                              )
                                                )
11         Plaintiffs,                          )  **MEMORANDUM OF POINTS AND**
                                                )  **AUTHORITIES IN SUPPORT OF**
12                                              )  **RICHARD T. LIZAMA'S AND MEL**
           v.                                   )  **GREY'S MOTIONS TO DISMISS**
13                                              )
                                                )  Date:  APR 1 3 2006
14 ANTONIO SABLAN, MEL GREY in his official     )  Time:  9:00 a.m.
   capacity as Acting Director of Immigration, and )  Judge: Hon. Alex R. Munson
15 RICHARD T. LIZAMA, personally and in his     )
   official capacity                            )
16                                              )
                                                )
           Defendants.                          )
   _____)

17         NOW COMES defendant Richard T. Lizama, personally and in his official capacity as

18 an Immigration Inspector and Mel Grey[1] in his official capacity as Acting Director of Immigration

19 and move this Court to dismiss plaintiffs' First, Third, and Fourth Claims for Relief pursuant to

20 Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which

21 relief may be granted.  The following memorandum of points and authorities is submitted in

22 support of the motion.

23

24 _____

25 [1] The Complaint in this case was originally directed at Antonio Sablan both personally and in his official capacity,
   because Mr. Sablan was the Acting Director of Immigration at that time.  However, he has since been replaced by
   Mr. Grey, who is now substituted as a party pursuant to Fed. R. Civ. Pro. 25(d).

FACTUAL ALLEGATIONS

According to the complaint, the corporate plaintiff in this matter, Auto Marine Inc., is engaged in water sport activities. The four individual plaintiffs are all employees of Auto Marine and all citizens of the Philippines. The individual plaintiffs have various official job titles, but all operate boats as part of their employment. Each of the individual plaintiffs was working under an employment contract that was approved by the Commonwealth of the Northern Mariana Island's Director of Labor. In addition, plaintiff Rolando Senoran was licensed by the U.S. Coast Guard as a U.S. Merchant Marine Officer.

According to the complaint, on or about February 15, 2005, the individual plaintiffs were arrested pursuant to an arrest warrant obtained by defendant Richard T. Lizama for violation of 3 CMC § 4434(e)(1), which prohibits the Director of Labor from approving nonresident worker certificates for surface tour boat operators, among other job categories. The Commonwealth has since instituted deportation proceedings against these individuals. According to the complaint, the Commonwealth has also filed criminal charges against Auto Marine's president, Adonis Santos, for employing the individual plaintiffs without proper documentation and authority.

LEGAL ARGUMENTS

FRCP 12(b)(6) authorizes dismissal for the failure to state a claim upon which relief can be granted. On a motion to dismiss, the complaint is construed in favor of the plaintiff, but the court should not assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the…laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897, 902 (1983).

1  I.   Plaintiffs' First Claim for Relief, for Declaratory and Injunctive Relief, Must be

2       Dismissed Because 3 CMC § 4434(e)(1) is Constitutional both on its Face and as

3       Applied

4       A.   *The Ninth Circuit has Already Ruled that the Non-Resident Worker Act is*

5            *Constitutional*

6       As the Court is undoubtedly aware, the Non-Resident Worker Act, of which 3 CMC §

7  4434(e)(1) is a part, was recently found by the Ninth Circuit not to be a violation of equal

8  protection. *Sagana v. Tenorio*, 384 F.3d 731 (9th Cir. 2004). In that case, a non-resident

9  worker ordered to depart for lack of valid work status sought to invalidate the entire Act, 3

10 CMC § 4411 *et seq*, on the grounds that, inter alia, it violated his right to "freely market his

11 labor in the common occupations of life to any prospective employer without restriction and on

12 equal terms as any citizen for so long a period as Plaintiff is lawfully admitted to the CNMI as a

13 nonresident worker." *Id* at 735-736. This supposed "right" was based on both 42 U.S.C. §

14 1981 and the equal protection clause of the Fourteenth Amendment. The Ninth Circuit found

15 that Sagana had no such right. Instead it found that the Act as a whole did not violate the right

16 to equal protection. *Id* at 741. However, it declined to extend its ruling to any particular

17 portion of the Act. *Id* at 741-742. Plaintiffs now ask this Court to disregard the clear ruling of

18 the Ninth Circuit by invalidating a provision at the heart of the Act. In so doing, they begin by

19 asking the Court to apply the wrong standard.

20      B.   *Plaintiffs Apply the Wrong Standard to 3 CMC § 4434(e)(1)*

21      Plaintiffs argue that 3 CMC § 4434(e)(1), (which, as noted above, essentially prevents

22 aliens from working in a number of job categories), lacks "any compelling reason or compelling

23 justification." Complaint at ¶ 51. Therefore, they argue, it is unenforceable on its face and as

24 applied. This compelling reason standard is also frequently referred to as "strict scrutiny" and

25 is the highest level of scrutiny that can be brought to bear on a question of equal protection. *See*

*e.g., Grutter v. Bollinger*, 539 U.S. 306, 326, 123 S. Ct. 2325, 2337-2338, 156 L. Ed. 2d 304 (2003). It is also the wrong standard to apply to Commonwealth immigration law. Instead, the Ninth Circuit has made clear that either intermediate scrutiny (law is substantially related to an important government interest) or rational basis scrutiny (law is rationally related to a legitimate government interest), should apply to Commonwealth immigration law. *See, Sagana v. Tenorio*, 384, F.3d 731, 740-742 (9th Cir. 2004).

C.    *The Law on its Face Easily Survives Rational Basis Scrutiny.*

1.    **Rational Basis Scrutiny is the Proper Standard.**

The first step in analyzing an equal protection claim is to determine the appropriate standard of review. The standard applicable to immigration laws under the United States Constitution is a "rational basis" standard. The federal government's exercise of its immigration authority is subject to extremely limited review. It receives almost total deference from courts. "[O]ver no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens. *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339, 29 S. Ct. 671, 676 (1909). The Supreme Court has held that "[its] cases have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S. Ct. 1473, 1478 (1977) (Internal citations and quotation marks omitted). As a result, and as the Supreme Court has repeatedly noted, "Congress regularly makes rules [using its immigration authority] that would be unacceptable if applied to citizens." *Id.* (quoting *Matthew v. Diaz*, 426 U.S. 67, 80, 96 S. Ct. 1883, 1893 (1976)). As long as those rules are not "wholly irrational", they should be upheld. *Diaz*, 426 U.S. at 83, 96 S. Ct. at 1893.

As this Court held in the *Sagana* case, the Commonwealth occupies the same position as the federal government with respect to immigration. *Sagana v. Tenorio*, Civ. Act. 01-0003

-4-

"Order Denying Plaintiff's Motion for Summary Judgment and Dismissing Case with Prejudice" at page 9 (April 9, 2003) (Opinion attached as Exhibit 1).[2]  As with the federal government, it is a routine and legitimate part of the business of the Commonwealth to classify on the basis of alien status.  Indeed, this Court found that the Commonwealth's Nonresident Worker Act, of which 3 CMC § 4434(e)(1) is a part, is strikingly similar to the federal government's H2-B Visa program.  *Id* at 13.[3]  Of course, the Commonwealth differs from the federal government in that the federal government's power derives directly from the Constitution and the Commonwealth's power derives from the Covenant.  However, the Covenant is the supreme law with respect to the Commonwealth, just like the Constitution is the supreme law elsewhere in the United States.  As Section 102 of the Covenant provides:

> The relations between the Northern Mariana Islands and the United States will be governed by this Covenant which, together with those provisions of the Constitution, treaties and laws of the United States applicable to the Northern Mariana Islands, will be the *supreme law of the Northern Mariana Islands.*

(emphasis added.)   Moreover, the Commonwealth's power is a delegation of power from Congress through the Covenant.  Thus, the Commonwealth indirectly derives its power from the same source as the federal government – the U.S. Constitution.

As the Commonwealth's immigration authority is strikingly similar to that of the federal government, its immigration activities are the same as those of the federal government, and its immigration powers are drawn indirectly from the U.S. Constitution itself, the

---

[2] On appeal, the Ninth Circuit declined to decide whether rational basis or intermediate scrutiny should apply to the Commonwealth's immigration laws.  Instead, it declared that the Non-Resident Worker Act survived either level of scrutiny.  *Sagana,* 384 F.3d at 742.  Notably, the Ninth Circuit placed the burden of proof on the plaintiff, regardless of which standard applied.  *Id.*

[3] Under the federal program, aliens must show that "qualified people in the United States are not available and that employment of the beneficiary(ies) will not adversely affect wages and working conditions of workers in the United States similarly employed . . . ."  8 C.F.R. § 214.2(h)(6)(vi)(1) (2003).

1    Commonwealth's exercise of its immigration responsibilities should be judged by the same

2    standard as the federal government's: rational scrutiny.

### 2.    3 CMC § 4434(e)(1) Clearly Survives Rational Basis Scrutiny

4        A court applying rational basis scrutiny to a statute is to be highly deferential to the

5    decisions of the legislature. *See, Heller v. Doe*, 509 U.S. 312, 319, 113 S. Ct. 2637, 2642

6    (1993) (holding that "rational-basis review in equal protection analysis is not a license for

7    courts to judge the wisdom, fairness, or logic of legislative choices.")  A statute survives

8    rational basis scrutiny "if there is a rational relationship between the disparity of treatment and

9    some legitimate governmental purpose."  *Id*.  Moreover, the government need not actually

10   articulate the legitimate purpose or rationale supporting the classification.  Instead, a statute

11   "must be upheld against equal protection challenge if there is any reasonably conceivable state

12   of facts that could provide a rational basis for the classification."  *Id* (internal citation and

13   quotation marks omitted).  The Court is required, under the rational basis standard, "to accept a

14   legislature's generalizations even when there is an imperfect fit between means and ends.  A

15   classification does not fail rational-basis review because it is not made with mathematical nicety

16   or because in practice it results in some inequality."  *Id* 509 U.S. at 321, 113 S. Ct. at 2643

17   (citations omitted).

18       In this case, the purposes of the Act are set forth clearly in 3 CMC § 4411, in which the

19   Commonwealth Legislature stated that "it is essential to a balanced and stable economy...that

20   residents be given preference in employment."  *Id* at § 4411(a).  However, the Legislature also

21   recognized, "the need for alien labor at the present state of economic development."  *Id*.  In

22   *Sagana*, the Ninth Circuit referred to these as "reasonable, important purposes," *Sagana*, 384

23   F.3d at 742, easily satisfying the requirement that the goals of the Act be a "legitimate

24   governmental purpose." *Heller*, 509 U.S. at 320, 113 S. Ct. at 2642.

25

The only requirement remaining is that § 4434(e)(1) have a rational relationship with these important governmental purposes. As plaintiffs choose entirely the wrong standard (compelling government interest) in their complaint, it perhaps goes without saying that they have not met their burden of showing that § 4434(e)(1) does not have a rational relationship with the legitimate governmental purposes. *See Sagana*, 384 F.3d at 742. On this ground alone, the Court should dismiss plaintiffs' first cause of action. Having said that, there is a rational relationship between the statute and the governmental purposes. The law simply provides that a few, narrowly-defined occupations are off-limits to nonresident workers, thereby serving the government's interest in preserving employment opportunities for locals in occupations the government apparently felt they were well-qualified to perform, while leaving many others open for nonresident workers. Plaintiffs have not met their burden and their claim for declaratory and injunctive relief should be dismissed.

D.     *The Law on its Face also Survives Intermediate Scrutiny*

Of course, plaintiffs might argue that rational basis is the wrong standard to apply, that the Court should apply intermediate scrutiny instead. This Court has previously ruled that rational basis scrutiny should apply, but the Ninth Circuit has implied that intermediate scrutiny might be the proper standard, though it is greater scrutiny than is applied to immigration laws passed by the U.S. Congress. *See Sagana* at 384 F. 3d at 741-742. Unfortunately for plaintiffs, even if this Court were to apply the intermediate standard here, their claim would still fail. The Ninth Circuit has already determined that the Nonresident Workers Act as a whole survives intermediate scrutiny and § 4434(e)(1) is a central tenet of that Act and one that directly serves the important governmental interest of promoting employment opportunities for CNMI residents. In addition, as was noted above, the plaintiffs wrongly choose the "compelling reason" standard in making their complaint and so have clearly failed to allege that § 4434(e)(1) is not "closely related to important government goals." As the Ninth Circuit has clearly put the

burden of proof on those seeking to overturn the Commonwealth's immigration laws, *Sagana,* 384 F.3d at 742, plaintiffs have also failed to meet their burden under intermediate scrutiny and their First Claim for Relief should therefore be dismissed.

      E.      *3 CMC § 4434(e)(1) Does not Violate the Right to Equal Protection as Applied*

      In addition to their facial challenge, plaintiffs also allege that 3 CMC § 4434(e)(1) violates their right to equal protection as applied to them. Such a claim requires an allegation that the plaintiffs have been treated differently than other similarly situated persons. *Sagana*, 384 F.3d at 740. In this case, the only basis of the plaintiffs' as-applied claim apparent in the complaint is that they are being treated differently than others on the basis of their status as either aliens or as a corporation that employs aliens. If this is the basis of their as-applied claim, then the claim is superfluous because § 4434(e)(1) is discriminatory on its face against all aliens and their potential employers, not just as applied to the plaintiffs particularly, and the important interest that discrimination serves has been clearly delineated above. If the as-applied claim has some other basis, it is not pleaded in the complaint. In either case, the claim should be dismissed.

II.     <u>Plaintiffs' Second Claim for Relief against Mr. Grey in his Official Capacity and Plaintiffs' Third Claim for Relief against Mr. Lizama in his Official Capacity Must be Dismissed as such Claims are Barred</u>

      Plaintiffs' "Second Claim for Relief" alleges a claim under 42 U.S.C. § 1983 against Mr. Grey in his official capacity as Acting Director of Immigration. Plaintiffs' "Third Claim for Relief" alleges a claim under 42 U.S.C. § 1983 against Mr. Lizama in his official capacity as an Immigration Inspector. This is entirely improper, as "Neither the [Commonwealth] nor its officers acting in their official capacity can be sued under § 1983." *De Nieva v. Reyes*, 966 F. 2d 480, 483 (9th Cir. 1992). Therefore, plaintiffs have failed to state a claim under § 1983 for

1  which relief may be granted against either Mr. Grey or Mr. Lizama in their official capacities

2  and these claims must be dismissed.

3  III.    Plaintiffs' Third Cause of Action Must be Dismissed as No Violation of the Right to

4         Equal Protection Has Been Shown[4]

5         Plaintiffs' third cause of action is for violation of their right to equal protection, made

6  enforceable under 42 U.S.C. § 1983.  As was noted above, the factual basis for this claim is not

7  clear.  More specifically, it is not clear whether plaintiffs are alleging that they were treated

8  differently than others similarly situated *because* they were aliens (or an employer of aliens) or

9  are alleging that they were treated differently *than* other aliens (or employers of aliens).  If it is

10 the former, then it is the law itself that they are challenging and, as was demonstrated above,

11 this challenge must fail because the law passes constitutional muster.  If it is the latter, then the

12 challenge must fail because plaintiffs have failed to make the necessary allegation of differential

13 treatment.  *See, Sagana*, 384 F.3d at 740.

14        In either case, plaintiffs are alleging differential treatment, but not one based on any

15 suspect classification.[5]  As such, plaintiffs' equal protection claim is subject only to rational

16 basis scrutiny.  *See Nelson v. City of Selma*, 881 F. 2d 836, 838-839 (9th Cir. 1989).  Plaintiffs

17 also "[bear] the burden of proving that [they have] been intentionally treated differently from

18 others similarly situated and that there is no rational basis for the difference in treatment."

19 *Thornton v. City of St. Helens*, 425 F. 3d 1158, 1167 (9th Cir. 2005).  In meeting this burden,

20 plaintiffs must "allege facts sufficient to overcome the presumption of rationality that applies to

21 government classifications."  *Wroblewski v. City of Washburn*, 965 F. 2d 452, 460 (7th Cir.

22 ───────────────

23 [4] Plaintiffs' "Second Claim for Relief" is not aimed at Mr. Lizama in either his official or personal capacity.
   Instead it concerns acts taken by Antonio Sablan. However, the factual allegations are essentially identical to those
24 alleged against Mr. Lizama in the "Third Claim for Relief."

25 [5] For reasons noted above, alienage in the context of immigration laws is not a suspect classification – it would be
   more correct to say that is the subject of the classification

1992).  In this case, all plaintiffs have alleged is that they have had the law enforced against them, when it might not have been enforced against others.  This is simply insufficient.

In fact, this is a classic example of seeking to have the law go unenforced against you because it has gone unenforced against others.   Unfortunately for plaintiffs, this is not something they have any right to because,

> "There is no right under the Constitution to have the law go unenforced against you, even if you are the first person against whom it is enforced, and even if you think (or can prove) that you are not as culpable as some others who have gone unpunished.  The law does not need to be enforced everywhere to be legitimately enforced somewhere…"

*Futernick v. Sumptner Township*, 78 F. 3d 1051, 1056, (6th Cir. 1996).   In sum, plaintiffs has entirely failed to meet the pleading requirements for a claim under 42 U.S.C. § 1983 and their claims should therefore be dismissed.

IV.    Mr. Lizama is Protected by Qualified Immunity

The U.S. Supreme Court created the doctrine of qualified immunity to reduce the burden of civil rights litigation on public officials and the federal court system.  *See, Harlow v. Fitzgerald*, 457 U.S. 800, 816-817, 102 S. Ct. 2727, 2737-2738 (1982).   It was designed to weed out frivolous lawsuits, such as this one, at an early stage.  *See id*.  Under *Harlow*, a government official like Mr. Lizama is shielded from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*, 457 U.S. at 818, 102 S. Ct. at 2738.   In determining whether a plaintiff may overcome qualified immunity and pursue a § 1983 cause of action against a government official in his personal capacity, the initial, threshold inquiry is two-fold: whether the facts show that a constitutional right was violated and, if so, whether that right was clearly established. *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003).  The first part of this inquiry is important because a finding in favor of the defendant on it cuts-off further inquiry. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001).

1

    A.   *Plaintiffs have not Shown any Constitutional Violation*

2        As is demonstrated above, plaintiffs have not shown a violation of their constitutional

3 right to equal protection at the appropriate level of scrutiny.  The plaintiffs have not alleged that

4 they were "intentionally treated differently from others similarly situated and that there is no

5 rational basis for the difference in treatment," *Thornton v. City of St. Helens*, 425 F. 3d 1158,

6 1167 (9th Cir. 2005), as is required under rational basis scrutiny.  They also have not alleged

7 that Mr. Lizama's actions were "not closely related to…important governmental goals…,"

8 *Sagana*, 384 F.3d at 741, as required under intermediate scrutiny.  Failing to do so is fatal to

9 plaintiffs' third claim for relief and this claim should be dismissed.

10    B.   *Even if a Constitutional Right was Violated, that Right is not Clearly Established*

11       In addition to demonstrating that a constitutional right was violated, the plaintiffs must

12 also prove that the right they seek to enforce was clearly established.  A right is clearly

13 established, "when the contours of the right are sufficiently clear that a reasonable official

14 would understand that what he is doing violates that right." *Camarillo v. McCarthy*, 998 F. 2d

15 638, 640 (9th Cir. 1993), *citing, Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034,

16 3039, 97 L.Ed.2d 523 (1987) (internal quotation marks omitted).  In this case Mr. Lizama

17 simply enforced a clear provision of a law that had recently been declared constitutional by the

18 Ninth Circuit. *See Sagana v. Tenorio*, 384 F.3d 731, 740-742 (9th Cir. 2004).  Under these

19 circumstances, only a very unreasonable official could conclude that enforcing that law would

20 violate anyone's rights.  If the Court concludes that Mr. Lizama's conduct in this case did

21 violate a constitutional right, he is entitled to qualified immunity and the third claim for relief

22 should still be dismissed.

23

24

25

-11-

V.    Plaintiffs' Fourth Cause of Action alleging § 1985(3) Conspiracy Should be Dismissed
      as it is Improperly Pled

        Plaintiff's second cause of action arises under 42 U.S.C. § 1985(3), which allows a
claim "against those who *conspire* to obstruct justice, or to deprive any person of equal
protection or the privileges and immunities provided by the Constitution." *Jaco v. Bloechle*,
739 F. 2d 239, 245 (6th Cir. 1984) (emphasis in original).   To prevail on such a claim, a
plaintiff must first show a violation of some right protected by 42 U.S.C. § 1983.  *Caldeira v.
County of Kauai,* 866 F.2d 1175, 1182 (9th Cir. 1989) ("the absence of a section 1983
deprivation of rights precludes a section 1985 conspiracy claim predicated on the same
allegations").   A plaintiff must also show, "that some racial, or perhaps otherwise class-based,
invidiously discriminatory animus lay behind the conspirators' action..." *Bray v. Alexandria
Women's Health Clinic*, 506 U.S. 263, 268, 113 S. Ct. 753, 758 (1993) (citation and internal
quotation marks omitted).

        Plaintiffs' § 1985(3) claim fails both of these tests.   First, as is demonstrated amply
above, plaintiffs have not shown that they have suffered any deprivation of rights protected by §
1983.   Second, plaintiffs have not demonstrated that they have suffered from class-based,
invidious discrimination because they have not demonstrated that they are part of a protected
class.

        The protection of § 1985(e) against class-based animus should not "be extended to every
class which the artful pleader can contrive..." *McLean v. International Harvester Co.,* 817 F.2d
1214, 1219 (5th Cir. 1987).   Instead, "the Supreme Court's evident concern...over the broad
literal sweep of [§ 1985(3)]...dictates the exercise of restraint when a court is confronted with
class-based discrimination grounded in a non-racial animus." *Id.*   As a result, one court has
restricted the scope of § 1985(3) to "classes having common characteristics of an inherent
nature--i.e., those kinds of classes offered special protection under the equal protection clause,

and…classes that Congress was trying to protect when it enacted the Ku Klux Klan Act." *Childree v. UAP/GA AG Chem, Inc.*, 92 F. 3d. 1140, 1147 (11th Cir. 1996).[6]  Another has chosen a slightly different formulation, stating that § 1985(3) applies only to classes "characterized by some inherited or immutable characteristic; and…those characterized by political beliefs or associations. *McLean*, 817 F.2d at 1219 (citation and internal quotation marks omitted). The Ninth Circuit does not have such a clear-cut standard, but does require that "the plaintiff must be a member of a class that requires special federal assistance in protecting its civil rights." *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990).

In trying to apply these various standards to the complaint, the first difficulty is determining what "class" the plaintiffs are alleging they belong to. This question is especially tricky considering that one of the plaintiffs is a corporation and the others are natural persons. The closest the complaint comes is the allegation that the plaintiffs were discriminated against because Mr. Adonis (the alleged owner of Auto Marine) and all the individual plaintiffs "were each aliens within the Commonwealth employed by Auto Marine." Complaint at ¶ 89. If the class is "Auto Marine employees" it seems clear that plaintiffs are not part of a class offered special protection under the equal protection clause, nor one characterized by inherent or immutable characteristic or by political belief, nor one requiring special federal protection, nor, especially, a class of persons met to be protected by Congress when they passed the original Ku Klux Klan Act in 1861.[7]

On the other hand, the class might be "aliens within the Commonwealth." This class is certainly more plausible, but it still does not meet the standard. First, being an alien in the

---

[6] Of course, this restriction applies only to class-based, but not race-based discrimination. There is no question that § 1985(3) can be applied where the alleged discrimination is race-based.

[7] Section 1985(3) originated in the Ku Klux Klan Act of 1861.

1   Commonwealth is neither an inherited nor an immutable, nor an inherent characteristic (unlike

2   race or ethnicity). Rather it is merely the status the individual plaintiffs currently have and one

3   that they can shed anytime by leaving the Commonwealth. Second, the class is clearly not

4   based in political belief or association. Third, it clearly was not intended to be protected by the

5   Ku Klux Klan Act, whose predominant purpose "was to combat the prevalent animus against

6   Negroes and their supporters." *United Brotherhood of Carpenters and Joiners of America,*

7   *Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835, 103 S. Ct. 3353, 3360, 77 L. Ed. 2d 1049

8   (1983). Fourth and finally, "aliens in the Commonwealth" are not a class offered special

9   protection of its civil rights under federal law, at least where immigration laws are concerned.

10   Instead, aliens are regularly subjected to rules in the immigration context that "would be

11   unacceptable if applied to citizens." *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S. Ct. 1473, 1478

12   (1977). In other words, in the immigration context, aliens do not have special protection under

13   federal law. Instead, they suffer special and unique disabilities. Plaintiffs have failed to meet

14   the most basic requirements to sustain a § 1985(3) claim – they have not shown violation of any

15   constitutional right enforceable through § 1983 and they have not shown that they are part of

16   class that is entitled to bring a § 1985(3) claim. Therefore, their "Fourth Claim for Relief" must

17   be dismissed.

18                           CONCLUSION

19       For the foregoing reasons, plaintiffs' First, Third, and Fourth Claims for Relief against

20   Immigration Inspector Richard T. Lizama, in both his personal and official capacities, and

21   Acting Secretary of Immigration Mel Grey, in his official capacity, should be dismissed for

22   failure to state a claim upon which relief may be granted.

23

24

25

1    Date: March 17, 2006.

Respectfully submitted,
2                          OFFICE OF THE ATTORNEY GENERAL

3

4

5                   By: _____
                      Kristin St. Peter
6                       Assistant Attorney General

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

-15-