Law Office of G. Anthony Long
P. O. Box 504970
Beach Road
San Jose, Saipan, MP 96950
Telephone No. (670) 235-4802
Facsimile No. (670) 235-4801

Attorney for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| AUTO MARINE, INC., ROLANDO SENORAN, BENJAMIN T. SANTOS AUGSTO SANTOS and NORMANDY SANTOS | ) CIVIL ACTION No. 05-0042 <br> ) <br> ) <br> ) <br> ) |
| Plaintiffs | ) |
| v. | ) PLAINTIFF'S PROPOSED FINDINGS <br> ) OF FACT AND CONCLUSIONS OF <br> ) LAW |
| MEL GREY, personally and in his official capacity, and RICHARD T. LIZAMA, personally and in his official capacity | ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

This case challenges the constitutionality of and application of  3 CMC §

4434(e)(1) as applied to Auto Marine and its employees. Section 4434(e)(1)

provides that:

> [t]he Director of Labor shall not approve nonresident worker
> certificates for the following job classifications: taxi cab driver,
> secretary, bookkeeper, accounting clerk, messenger, receptionist,
> surface tour boat operator, bus driver, including tour bus driver,
> and telephone switchboard operator.

## FACTS

The facts underlying this action are set forth in the Stipulated Facts and Plaintiff's Exhibits filed herein. These facts establish that plaintiff Auto Marine, Inc., ("Auto Marine") is a corporation formed under laws of the Commonwealth of the Northern Mariana Islands ("Commonwealth") which operates a business that engages in water sport activities such as parasailing, banana boat rides, ocean walks, scuba diving, and transporting passengers ion connection with its business activities.

Adonis Santos ("Adonis") is the President of Auto Marine. Benjamin T. Santos("Benjamin"), and Augusto Santos ("Augusto"), Normandy Santos ("Normandy") and Rolando Senoran ("Rolando"),  are each citizens  of the Philippines who at all times relevant herein, were lawfully present in the Commonwealth and employed by Auto Marine. In being aliens, Rolando, Benjamin, Augusto and Normandy were lawfully employed with Auto Marine pursuant to an employment contract approved by the Commonwealth's Director of

Labor. Rolando, Benjamin and Normandy each possessed a license from the United States Coast Guard authorizing them to operate uninspected undocumented passenger vessels as defined in 46 U.S.C. § 2101(42) upon near coastal waters not more than 100 miles offshore. Augusto did not possess a Coast Guard license. The boats owned by Auto Marine fall within the 46 U.S.C. § 2101(42)'s definition of uninspected passenger vessel. Additionally, at all times relevant herein, Auto Marine operated its vessels in waters over the submerged lands over which the United States has sovereignty.

Between December 2004 and February 2005, the Commonwealth Division of Immigration conducted a surveillance operation against Auto Marine because of an unidentified competitor's complaint. Based on this surveillance, the Commonwealth subsequently instituted deportation proceedings against Rolando, Benjamin, Normandy and Augusto and criminal charges against Adonis. The Commonwealth based such action on grounds that Rolando, Benjamin, Normandy and Augusto each were observed at certain times performing the duties of a surface tour boat operator. Specifically, Rolando was claimed to have operated a boat transporting tourist to the site for ocean or sea walk activities. Normandy was claimed to have operated a boat with tourist on board. Benjamin was said to have operated a boat dropping off tourist at Smiling Cove and Normandy was

reportedly observed operating a boat which was pulling a banana boat with tourist on the banana boat. Tourist were not seen in the boat in which Augusto was operating. Also, Rolando was allegedly seen operating a 7 to 15 person passenger van transporting tourist to and from Smiling Cove for Auto Marine. The conduct of Rolando, Normandy, Benjamin, and Augusto are claimed to violate 3 CMC § 4437(e)(1) which precluded their performing services of a surface tour boat operator. Additionally, it appears that Benjamin is claimed to have violated § 4437(e)(1) because he also performed the services of a tour bus driver.

The Division of Immigration Services ("DIS") is an agency or instrumentality of the Commonwealth government. Defendant Mel Grey, in his official capacity, is currently the Director of DIS.


## DECISION

**I.    THE PARAMOUNTCY DOCTRINE PRECLUDES THE COMMONWEALTH FROM ENFORCING 3 CMC § 4434(e)(1) BASED ON AUTO MARINE'S ALIEN EMPLOYEES OPERATING A BOAT UPON NEAR COASTAL**


**A.    THE COMMONWEALTH LACKS JURISDICTION OVER THE WATERS ABOVE THE SUBMERGED LANDS THEREBY RENDERING 3 CMC § 4434(E)(1) UNCONSTITUTIONAL AS APPLIED TO ACTIVITIES ON THE WATERS ABOVE THE SUBMERGED LANDS**

The paramountcy doctrine vests the United States with sovereign control over the submerged lands under the waters adjacent to the Commonwealth. *Northern Mariana Islands v. United States*, 399 F.3d 1057 (9ᵗʰ Cir. 2005). Consistent with the paramountcy doctrine, courts have recognized and held that:

> [t]he marginal sea is a national, not a state concern. National interests, national responsibilities, national concerns are involved. The problems of commerce, national defense, relations with other powers, war and peace focus there. National rights must therefore be paramount in that area.

*United States v. Louisiana*, 339 U.S. 699, 704, 70 S.Ct. 914, 94 L.Ed. 1216 (1950); *Northern Mariana Islands v. United States*, 399 F.3d at 1060. Similarly, this court has held that "the United States possesses 'paramount rights in and powers over the waters extending seaward of the ordinary low water mark on the Commonwealth coast and the lands, minerals, and other things of value underlying such waters.'" *Northern Mariana Islands v. United States*, 2003 WL 22997235 at 14, (D.N.Mar.I., 2003) aff'd 399 F.3d 1057 (9ᵗʰ Cir. 2005)[1]. This ruling recognizes that the United States possesses paramount rights and powers over the

---

[1]Grey in his official capacity is collaterally estopped from challenging or taking any legal position contrary to this court's ruling in *Northern Mariana Islands v. United States*, 2003 WL 22997235 as Grey, in his official capacity, is in effect the Commonwealth. *See Larez v. City of Los Angeles*, 946 F.2d 630, 646 (1991)[An action against a government officer in her official capacity is ordinarily equivalent to an action against the government entity itself]; *McRorie v. Shimoda*, 795 F.2d 780, 783 (9 Cir.1985)[same].

waters at issue in this lawsuit and the Commonwealth cannot enforce

Commonwealth laws which are contrary to or in conflict with federal law.

For instance, *in Native Village of Eyak v. Trawler Diane Marie, Inc.*, 154 F.3d

1090 (9th Cir. 1998)("*Eyak I*") an Indian tribe contended that while the United

States controlled the submerged lands, the tribe possessed exclusive rights over

hunting and fishing over portions of the submerged lands. The Ninth Circuit

rejected the argument concluding that it was barred by the paramountcy doctrine.

1094 - 1097. *Eyak I's* rational and holding apply to this case wherein the

Commonwealth claims its right or authority to regulate navigation and boating on

the waters above the submerged land is not subordinate to the United States law.

It should also be noted that the Commonwealth does not have any

jurisdiction, concurrent or otherwise over the waters at issue. This court

recognizes that "absent congressional legislation specifically conveying control

over oceanic submerged lands and associated natural resources, the Supreme

Court has concluded that local governments have no authority to legislate and/or

regulate concerning the territorial sea." *Northern Mariana Islands v. United

States*, 2003 WL 22997235 at 24 citing *United States v. California*, 332 U.S. 19,

33 - 34, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947). There is not any federal legislation

granting the Commonwealth any authority over the waters of the territorial seas.

Indeed, Senate Bill, S.1831, and House Bill, H.R. 4255, both introduced during the first session of the 109th Congress sought to grant the Commonwealth some authority over the territorial seas within the three mile territorial limit. However, neither bill was enacted passed by either legislative body[2]. In fact, the Commonwealth opposed S.1831 and H.R. 4255 on grounds that the proposed legislation did not grant it enough authority[3].

Thus, just as this court found that the Commonwealth's Marine Sovereignty Act of 1980[4] was unconstitutional pursuant to the paramountcy doctrine, *Northern Mariana Islands v. United States*, 2003 WL 22997235 at 23 - 24, the paramountcy doctrine also results in 3 CMC § 4434(e)(1) being unconstitutional to the extent it seeks to prosecute or deport any Auto Marine employee based upon a local statute purporting to govern or regulate activities on waters over which the Untied States has jurisdiction.

---

[2]A copy of S. 1831 and H.R. 4255 are attached hereto as Attachment A. The court can take judicial notice of the legislative bills pursuant to FRE Rule 201.

[3]The newspaper articles attached hereto as Exhibit B reveal the Commonwealth's position. The court can take judicial notice of the information contained in the attached articles.

[4]Among other things, the Marine Sovereignty Act of 1980 claimed a 12 mile territorial sea for the Commonwealth.

**B.    3 CMC § 4434(E)(1) VIOLATES THE PARAMOUNTCY DOCTRINE BECAUSE  IT IS CONTRARY TO FEDERAL LAW AS APPLIED TO ACTIVITIES ON THE WATERS ABOVE THE SUBMERGED LANDS**

Federal law provides that a self-propelled, uninspected passenger vessel[5]

shall be operated by an individual licensed to operate that type of vessel, under

prescribed regulations. 46 U.S.C.A. § 8903. Consistent with this statutory

authorization Coast Guard regulations provide that "[e]very self-propelled,

uninspected vessel as defined by 46 U.S.C. § 2101 (42)(B), carrying not more than

six passengers, must be under the direction and control of an individual holding a

license as operator." 46 CFR Sec. 15.605(a). Coast Guard regulations further

_____

[5] 46 U.S.C. § 2101(42) defines an  "uninspected passenger vessel" to mean an uninspected vessel:
    (A) of at least 100 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title--
    (I) carrying not more than 12 passengers, including at least one passenger for hire; or
    (ii) that is chartered with the crew provided or specified by the owner or the owner's representative and carrying not more than 12 passengers; and
    (B) of less than 100 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title--
    (I) carrying not more than 6 passengers, including at least one passenger for hire; or
    (ii) that is chartered with the crew provided or specified by the owner or the owner's representative and carrying not more than 6 passengers.

expressly provide that "[a]n operator of uninspected passenger vessels license, limited on its face to undocumented vessels, **may be issued to a person who is not a citizen of the United States.**" 46 CFR Sec. 10.467(f)(emphasis added).

The facts establish that for the period December 2004 through February, 2005, Rolando, Normandy and Benjamin each possessed a license issued by the U.S. Coast Guard authorizing them to operate an uninspected passenger vessel in near coastal waters. Exhibits 1, 2 and 3. The facts also establish that Auto Marine's vessels or boats all are uninspected passenger vessels as defined by 46 U.S.C. § 2101(42). The Commonwealth brought deportation proceedings against Rolando, Normandy, and Benjamin andcriminal charges against Adonis arising from Rolando, Normandy and Benjamin operating uninspected passenger vessels in accordance with their Coast Guard license and authorization. *See* Exhibits 7, 9, 18, and 20. The Commonwealth claims that its law precludes Rolando, Normandy and Benjamin's from operating auto Marine's the vessels or boats because they are aliens. *See* Exhibits 7, 9, 18, and 20. Despite the Commonwealth's contention, federal law clearly allows Rolando, Normandy and Benjamin to possess a Coast Guard license to operate uninspected passenger vessels in near coastal waters even though they are aliens. 46 CFR Sec. 10.467(f). Thus, 3 CMC § 4437(e)(1) conflicts with federal law and Coast Guard regulations to the extent it renders it

illegal or unlawful for an alien who possess the applicable Coast Guard license to operate an uninspected passenger vessel in and upon near coastal waters *See United States  v. Locke,* 529 U.S. 89, 109 - 110,  120 S.Ct. 1135 (U.S. 2000)[Coast Guard regulations are to be given pre-emptive effect over conflicting state laws]; *United States v. Massachusetts*, 493 F.3d 1, 8 (1st Cir.  2007)[Coast Guard regulations are to be given pre-emptive effect over conflicting state laws]. *See also Northern Mariana Islands v. United States*, 2003 WL 22997235 at 23 - 24[Commonwealth laws that are in direct conflict with, and/or stand as obstacles to, the accomplishment of the purposes of federal law are preempted].

## II.   THE 14TH AMENDMENT'S  EQUAL PROTECTION CLAUSE PRECLUDES APPLICATION OF AND ENFORCEMENT OF 3 CMC § 4437(e)(1) AGAINST AUTO MARINE EMPLOYEES

## A.   SECTION 4437(e)(1) VIOLATES EQUAL PROTECTION REGARDLESS OF THE STANDARD OF SCRUTINY

Auto Marine does not seek to declare the entire Non-resident Workers Act ("NWA") unconstitutional. Instead, it challenges the constitutionality of a specific statute under the NWA. As held by *Sagana v. Tenorio*, 384 F.3d 731 (9th Cir. 2004):

> [i]n holding that the NWA as a whole passes both rational basis review and intermediate scrutiny, we take no position on whether

individual sections of the NWA would satisfy a more focused Equal Protection challenge. **Our decision does not foreclose the possibility that discrete elements of the CNMI's temporary worker program could violate the equal protection rights of nonresident workers**.

384 F.3d at 741 - 742(emphasis added). Auto Marine alleges that 3 CMC §
4434(e)(1) violates equal protection on its face or as applied. The first issue with
respect to the equal protection challenge is what standard of review applies.
*Kahawaiolaa v. Norton*, 386 F.3d 1271, 1277 (9th Cir. 2004). The three levels of
scrutiny are strict, intermediate and rational basis. *Id*.

While *Sirilan v. Castro*, 1 C.R. 1082(D.N.M.I. App. Div 1984) and *Chun
Nam Kin v. Government of the Northern Mariana Islands*, 1989 WL 311391 at 4
(D.N.Mar.I. 1989), hold that the immediate level of review applies to the
Commonwealth's immigration powers. *Id* at 1118 - 1119, 1125, and 1130 *Tran v.
Commonwealth of Northern Mariana Islands* 780 F.Supp. 709 (D.N.M.I. 1991)
and *Yang v. American Intern. Knitters Corporation*, 789 F.Supp. 1074, 1077
(D.N.M.I. 1992) declined to decide whether intermediate scrutiny or rational
basis constituted the applicable analysis for a NWA statute. In *Sagana*, the parties
disagreed on whether the intermediate or rational basis test applied to the equal
protection challenge to the NWA. 384 F.3d at 740 - 741. *Sagana*, however, did
not decide what standard of review applied to the NWA because the Court

determined that entire NWA survived an equal protection challenge regardless of what level scrutiny was applied. *Id.* Since *Sagana* did not decide the applicable level of judicial scrutiny, remains an open issue in the Ninth Circuit as to the level of scrutiny applicable to statutes passed under the NWA. *See Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir.1985) [Questions not specifically ruled on are not of any precedential value or controlling authority]; *Sorenson v. Mink*, 239 F.3d 1140, 1143 (9th Cir. 2001)(same). It is determined that strict scrutiny applies.

Although *Sagana* did not decide what level of scrutiny applied to the NWA, *Sagana* **does** expressly hold that "the Fourteenth Amendment applies to the CNMI 'as if the Northern Mariana Islands were one of the several states.'" 384 F.3d at 740. *See also Basiente v. Glickman*, 242 F.3d 1137, 1143 - 1144 (9th Cir. 2001). Indeed, even the Commonwealth Supreme Court recognizes that "[t]he Government of the Northern Mariana Islands is to be considered a State government for the purpose of applying the Equal Protection Clause." *Commonwealth of Northern Mariana Islands v. Attao*, 2005 MP 8 at n.9, 2005 WL 3776312 at 4 n. 9 (2005). This means the equal protection clause of the 14th Amendment applies to the Commonwealth as if it were a State, and not as if the

Commonwealth was the federal government[6].

It is settled law that, when a state statute involves a  classification such as alienage, the statute is subject to strict scrutiny. *Graham v. Richardson*, 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534 (1971).  Accordingly, a state statute which discriminates in employment based on alienage violates equal protection if it does not satisfy the strict scrutiny analysis. *Bernal v. Fainter*, 467 U.S. 216, 104 S.Ct. 2312, 81 L.Ed.2d 175 (1984)[ state law denying alien the right to become a notary public struck down under strict scrutiny equal protection analysis]; *Examining Board v. Flores de Otero*, 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976)[ Puerto Rico statute that only permitted United States citizens to practice privately as civil engineers unconstitutional pursuant to strict scrutiny ]; *Sugarman v. Dougall*, 413 U.S. 634, 93 S. Ct. 2842, 37 L.Ed.2d 853 (1973)[State law barring aliens from permanent positions in state civil service violates equal protection clause of 14th Amendment as it does not satisfy strict scrutiny]; *In Re Griffins*, 413 U.S. 717, 93 S. Ct. 2851, 37 L.Ed.2d 910 (1973)[State rule precluding resident aliens from being admitted to State Bar stricken as rule did not satisfy strict scrutiny]. To withstand strict scrutiny a statute must meet a two prong test which is 1) the statute must serve a compelling state

---

[6]This means the Commonwealth's immigration power and authority is not equivalent to and is not the same as that of the United States.

interest and 2) it must  be precisely tailored to serve the compelling interest. *Pyler v. DOE*, 457 U.S. 202, 216, 217, 102 S.Ct. 2382, 2394, 2395, 72 L.Ed.2d 786 (1982). The "precisely tailored" requirement means that the method used to further the compelling state interest is the least restrictive way of doing so. *Goehring v. Brophy*,  94 F.3d 1294 (9th Cir. 1996).

Section  4434(e)(1) bars employment in a particular job based solely on alienage. *Sagana* mandates applying the 14th Amendment to the Commonwealth as if it were as State. This  means strict scrutiny applies to Commonwealth statutes, such as § 4434(e)(1),  which discriminate on the basis of alienage. Defendants have not and can not identify any compelling governmental reason justifying § 4434(e)(1).

Even if it is determined that intermediate scrutiny or rational basis, as opposed to strict scrutiny, applies to this case, then § 4434(e)(1) still violates equal protection as the  as the statute can not survive a rational basis constitutional challenge. *See Truax v. Raich*, 239 U.S. 33,  36 S.Ct. 7, 60 L.Ed. 131 (1915). *Truax* addressed the constitutionality of a state statute which required employers workforce to consist of at least 80% United States citizens and imposed criminal

penalties on an employer that failed to comply with the statute. 239 U.S. at 35, 36 S.Ct. at 8. The defendant argued that the statute was justified "as an exercise of the power of the state to make reasonable classifications in legislating to promote the health, safety, morals, and welfare of those within its jurisdiction." 239 U.S. at 41, 36 S.Ct. at 10. *Traux* rejected such rationalization and held that the statute violated the 14th Amendment's equal protection clause. 239 U.S. at 41 - 43, 36 S.Ct. at 10 - 11.The same rational applies here. Accordingly, Section 4437(e)(1) and its employment restrictions contravene equal protection.

Additionally, Grey can not articulate a rational basis for the restriction as it applies to the operation of uninspected passenger vessels operated by Rolando, Normandy or Benjamin.

The marginal seas are a national interest and the federal government has the power to regulate its usage. *United States v. Louisiana, supra.* Also, the Commonwealth lacks jurisdiction over any part of the territorial seas adjacent to the Commonwealth or the seas above the submerged lands. *Northern Mariana Islands v. United States, supra.* Federal law expressly allow Rolando, Normandy and Benjamin to operate uninspected passenger vessels upon near coastal waters if

they possess an operators license from the U.S. Coast Guard, 46 U.S.C.A. § 8903;

46 CFR Sec. 15.605(a0, even though they are aliens, 46 CFR Sec. 10.467(f). In

light of the federal law applicable to the Commonwealth, there can not be a

legitimate local concern or rationalization which supercedes a federal

authorization.  Even more so, a legitimate rationalization can not be articulated as

Commonwealth law also allows Rolando, Normandy or Benjamin to the operation

of uninspected passenger vessels.

      Commonwealth law provides that:

> [a]ll vessels subject to this chapter which carry passengers for hire
> shall, in addition to any rules and regulations promulgated under
> this chapter, **comply with the Coast Guard rules and regulations
> concerning vessels carrying passengers for hire**.

3 CMC § 5452(emphasis added). As previously noted, Rolando, Normandy or

Benjamin operating boats for Auto Marine complied with and was lawful under

the applicable Coast Guard regulations and accordingly in compliance with 3

CMC § 5452. This circumstance further precludes there being any rational basis

for precluding or making it unlawful for Rolando, Normandy or Benjamin to

operate an uninspected passenger vessel in near coastal waters.

**B.    THE APPLICATION AND ENFORCEMENT OF § 4437(E0(1)
AGAINST AUTO MARINE AND ITS EMPLOYEES IS ARBITRARY**

" The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445, 43 S.Ct. 190, 67 L.Ed. 340 (1923). The interpretation and application of § 4437(e)(1) to Auto Marine and its employees is an arbitrary and improper execution of the law.

The Commonwealth filed criminal charges against Adonis and sought the deportation of Benjamin, Normandy, Rolando and Augusto on grounds that Benjamin, Normandy, Rolando and Augusto performed the work, at times, of a "surface tour boat operator in violation of § 4437(e)(1). Such enforcement action is arbitrary in light of the applicable law. Section 4437(e)(1) precludes the department of Labor from approving an alien from performing work in the job classification of "surface tour boat operator." First, the NA does not define the term "surface tour boat operator.' Secondly , and most importantly,

Commonwealth law explicitly provides that the term "job classification" as used in the NWA means "the job classification described and listed as an occupational group under the Dictionary of Occupational Titles." 3 CMC § 4412(j). To this extent, research reveals that the Dictionary of Occupational Titles does not contain a job classification or category known as "surface tour boat operator." Thus, it is an arbitrary classification or determination to claim that Benjamin, Normandy, and Rolando were performing the services of "surface tour boat operator" simply because they allegedly transported tourist on a boat to go on an ocean or sea walk, *see* Exhibit 7 at ¶¶ 4 -5, dropping tourist off at a specific destination, *see* Exhibit 18 at ¶ 4, or merely operating a boat with tourist on board, Exhibit 9 at ¶¶ 4 -5. This is especially the case regarding Augusto as Augusto did not have any tourist on board of the boat he was allegedly operating. *See* Exhibit 19. Instead, it is claimed he was operating a boat that was towing a "banana boat" and the tourist were on the banana boat. *See* Exhibit 19. It is therefore arbitrary to claim Augusto was performing services of a "surface tour boat operator" when there were not any

tourist on board the boat he was operating[7].

The allegation that Benjamin was in violation of 3 CMC § 4437(e)(1) is further arbitrary as his employment contract specifically allow shim to drive a boat as necessary. Exhibit 12. *See* Exhibits 13 - 17. The Commonwealth instituting deportation and criminal proceedings based on Benjamin performing services expressly allowed under his contract demonstrates the arbitrariness of the action against Auto Marine and its employees.

Finally, the application and enforcement of § 4437(e)(1) under the facts of this case, at least as they relate to operation of boats,  is arbitrary and violate equal protection as the statute is not applied to or enforced against Japanese cruise ships that visit the Commonwealth, Stipulated Fact No. 38, and it is not applied to or enforced against Tinian Shipping which operates Ferry service between Saipan and Tinian, Stipulated Fact No. 39.

The claim that Benjamin violated § 4437(e)(1) because he was alleged to have driven a 7 to 15 person van is also arbitrary. Section 4437(e)(1) purports to

---

[7]The arbitrariness of inherent in the interpretation and application of 437(e)91) also makes it violative of due process for being void for vagness.

preclude an alien from driving a "tour bus." While the Dictionary of Occupational Titles ("DOT") contains the classification of "bus driver", *see* DOT Code No. 913.463-010, it does not contain a classification known as tour bus driver. Most importantly, however, it does not define the term bus. So it is arbitrary to claim that a 7 to 15 person van is a bus for purposes of § 4437(e)(1).

## CONCLUSION

The application and enforcement of § 4437(e)(1) against Auto Marine and its employees violates the paramountcy doctrine to the extent it applies to Auto Marine's activities upon waters above the submerged lands and conflicts with Coast Guard regulations governing the operating of uninspected passenger vessels in near coastal waters. Furthermore, the statute violates equal protection as no compelling reason or rational basis exists for the employment restrictions it imposes. Lastly, the manner in which the Commonwealth applies the employment restrictions to the facts of this case is arbitrary and thereby a violation of equal protection.

Judgment is hereby entered in favor of Auto Marine and Auto Marine is

entitled to recover its attorneys fees and costs.

Law Office of G. Anthony Long

By:_____/s/_____
G. Anthony Long

ATTACHMENT   A

II

109TH CONGRESS
1ST SESSION

# S. 1831

To convey certain submerged land to the Commonwealth of the Northern
Mariana Islands, and for other purposes.

---

## IN THE SENATE OF THE UNITED STATES

OCTOBER 6, 2005

Mr. DOMENICI (for himself and Mr. BINGAMAN) (by request) introduced the
following bill; which was read twice and referred to the Committee on En-
ergy and Natural Resources

---

# A BILL

To convey certain submerged land to the Commonwealth
of the Northern Mariana Islands, and for other purposes.

1  *Be it enacted by the Senate and House of Representa-*

2  *tives of the United States of America in Congress assembled,*

3  **SECTION 1. CONVEYANCE OF CERTAIN SUBMERGED LAND**

4  **TO THE COMMONWEALTH OF THE NORTHERN**

5  **MARIANA ISLANDS.**

6  The first section of Public Law 93–435 (48 U.S.C.

7  1705) is amended—

8  　　　(1) in the second sentence of subsection (b), by

9  　　　inserting "Commonwealth of the Northern Mariana

10  　　　Islands," after "Guam,"; and

2

1        (2) by adding at the end the following:

2        "(e)(1) Subject to valid existing rights, all right, title,

3    and interest of the United States in land permanently or

4    periodically covered by tidal water up to but not above the

5    line of mean high tide and seaward to a line 3 geographical

6    miles distant from the coastline of the territory of the

7    Commonwealth of the Northern Mariana Islands (as modi-

8    fied before, on, or after the date of enactment of this sub-

9    section by accretion, erosion, or reliction, or in artificially

10   made, filled in, or reclaimed land that was formerly per-

11   manently or periodically covered by tidal water) are con-

12   veyed to the Government of the Commonwealth of the

13   Northern Mariana Islands to be administered in trust for

14   the benefit of the people of the Commonwealth.

15       "(2) The conveyance shall be subject to clauses (ii),

16   (iv), (v), (vii), (viii), and (ix) of subsection (b) and sub-

17   section (c), except that each reference to the 'date of en-

18   actment of this Act' in those clauses shall (for the pur-

19   poses of this subsection) be considered to be a reference

20   to the date of enactment of this subsection.".

21   **SEC. 2. AUTHORITY OF SECRETARY TO RESOLVE CERTAIN**

22                  **CLAIMS OF THE COMMONWEALTH OF THE**

23                  **NORTHERN MARIANA ISLANDS.**

24       (a) IN GENERAL.—On the request of the Governor

25   of the Commonwealth of the Northern Mariana Islands,

3

1 the Secretary of the Interior may settle any claim of the

2 Commonwealth arising pursuant to any provision of the

3 Covenant to Establish a Commonwealth of the Northern

4 Mariana Islands in Political Union with the United States

5 of America, approved by the first section of Public Law

6 94–241 (48 U.S.C. 1801 note).

7     (b) ASSISTANCE.—

8         (1) REQUEST.—The Secretary may request as-

9     sistance from the head of any other Federal agency

10     in order to expeditiously resolve any claim described

11     in subsection (a).

12         (2) PROVISION.—On request, the head of the

13     Federal agency shall provide the assistance.

14     (c) AUTHORIZATION OF APPROPRIATIONS.—

15         (1) IN GENERAL.—There are authorized to be

16     appropriated to the Secretary such sums as are nec-

17     essary to carry out subsection (a).

18         (2) OTHER FUNDS.—The Secretary may also

19     use to carry out subsection (a) any other sums that

20     are appropriated for the purpose of a provision of

21     the Covenant that is subject to a claim by the Com-

22     monwealth.

○

I

109TH CONGRESS
1ST SESSION

# H. R. 4255

To convey certain submerged lands to the Commonwealth of the Northern
Mariana Islands in order to give that territory the same benefits in
its submerged lands as Guam, the Virgin Islands, and American Samoa
have in their submerged lands.

---

## IN THE HOUSE OF REPRESENTATIVES

NOVEMBER 8, 2005

Mr. FLAKE (for himself, Ms. BORDALLO, Mr. FORTUÑO, Mrs. CHRISTENSEN,
Mr. DOOLITTLE, Mr. ABERCROMBIE, Mr. BURTON of Indiana, and Mr.
FALEOMAVAEGA) introduced the following bill; which was referred to the
Committee on Resources

---

# A BILL

To convey certain submerged lands to the Commonwealth
of the Northern Mariana Islands in order to give that
territory the same benefits in its submerged lands as
Guam, the Virgin Islands, and American Samoa have
in their submerged lands.

1    *Be it enacted by the Senate and House of Representa-*

2  *tives of the United States of America in Congress assembled,*

2

1 **SECTION 1. CONVEYANCE OF CERTAIN SUBMERGED LANDS**

2         **TO THE COMMONWEALTH OF THE NORTHERN**

3         **MARIANA ISLANDS.**

4     The first section of Public Law 93–435 (48 U.S.C.

5 1705) is amended—

6         (1) in the second sentence of subsection (b), by

7         inserting "the Commonwealth of the Northern Mar-

8         iana Islands," after "Guam," each place it appears;

9         and

10         (2) by adding at the end the following:

11     "(e)(1) Subject to valid existing rights, all right, title,

12 and interest of the United States in lands permanently

13 or periodically covered by tidal waters up to but not above

14 the line of mean high tide and seaward to a line 3 geo-

15 graphical miles distant from the coastline of the territory

16 of the Commonwealth of the Northern Mariana Islands

17 (as modified before, on, or after the date of enactment

18 of this subsection by accretion, erosion, or reliction, or in

19 artificially made, filled in, or reclaimed lands that were

20 formerly permanently or periodically covered by tidal wa-

21 ters) are conveyed to the Government of the Common-

22 wealth of the Northern Mariana Islands to be adminis-

23 tered in trust for the benefit of the people of the Common-

24 wealth of the Northern Mariana Islands.

25     "(2) The conveyance shall be subject to subsections

26 (b), (c), and (d) except that each reference to the 'date

3

1 of enactment of this Act' in those clauses shall (for the
2 purposes of this subsection) be considered to be a ref-
3 erence to the date of enactment of this subsection.".

**4 SEC. 2. APPLICATION OF PUBLIC LAW 93–435.**

5     Public Law 93–435 (48 U.S.C. 1705 et seq.) is
6 amended by adding at the end the following new section:

**7 "SEC. 7. CONSISTENT APPLICATION.**

8     "This Act is intended to be applied in a consistent
9 manner to Guam, the Virgin Islands, American Samoa,
10 and the Commonwealth of the Northern Mariana Islands,
11 except to the extent that there is a specific and express
12 exception in this Act regarding its application to one or
13 more of these territories.".

○

ATTACHMENT   B

Saipan Tribune

http://www.saipantribune.com/newsstory.aspx?cat=1&newsID=59040

## LOCAL

**Monday, July 03, 2006**

### Govt sees hope in submerged lands claim

**By Agnes E. Donato**
**Reporter**

The Fitial administration has said that its campaign for greater Commonwealth control over the islands' submerged lands is not a long shot as it may seem.

Attorney General Matthew T. Gregory, who recently came back from a trip to Washington, D.C., announced Friday that the administration's efforts to secure federal concessions to develop the CNMI's marine resources is gaining support in the nation's capital.

Gregory said that Senate staffers and D.C.-based representatives of other U.S. territories had expressed interest in increasing the rights of the Pacific jurisdictions over their submerged lands.

Gregory, along with Finance Secretary Eloy Inos and assistant attorney general James Stump, also had "very positive meetings" with Deputy Interior Assistant Secretary David Cohen and other staff members of the Office of Insular Affairs concerning the submerged lands issue, the attorney general said.

"We found that members of Congress are in theory receptive to the possibility of increasing the economic rights of the territories as a whole. There is at least on the table the possibility of having some sharing of income derived from the economic zone, as far as possibly 200 miles," Gregory said.

The Fitial administration believes that the CNMI submerged lands bills currently pending in Congress would not provide the Commonwealth any economic benefit.

The proposed legislation, according to a legal opinion issued by the Attorney General's Office, offers the Northern Marianas the same deal given to Guam, American Samoa and the U.S. Virgin Islands with regard to their underwater resources. This deal includes only qualified rights and interest in submerged land up to three miles, and full right to coral, sand and gravel within that three-mile area.

Meanwhile, the AGO says, all coastal states, including Alaska and Hawaii, have full rights to manage, lease and develop their territorial waters and marine resources extending up to three miles offshore. They also get 27 percent of all federal rents, royalties and revenues paid annually by developers to the coastal state.

The U.S. bills have not been acted on, at the request of the Fitial administration.

"So we're hopeful that any arrangement involving submerged lands will give the CNMI a portion of the value of the benefit for such development. Under the existing proposed legislation, there is no such value," Gregory said. "So with all legislation and negotiations, we can't predict what Congress will do. We're just trying to come up with the best deal possible for all of the territories."

The administration has been widely criticized for its position on the submerged lands issue. Many ranking CNMI officials, including Washington Rep. Pete A. Tenorio and several lawmakers, maintain that the CNMI should take what it can get, rather than have nothing at all.

The federal government has also repeatedly said that it would only support a three-mile submerged lands control for the territories.

Back to top 

**You can make a difference**
Volunteer your skills and time to create change in your community.

**Volunteer Ringtone**
Send this complimentary ringtone to your phone right now!

Ads by Google

9/22/2007 9:24 AM

## LOCAL

Tuesday, June 06, 2006

ON SUBMERGED LANDS ISSUE
Fitial seeks support of Pacific lawmakers

By Agnes E. Donato
Reporter

 Gov. Benigno R. Fitial used a meeting of Pacific Island lawmakers yesterday to solicit support for his campaign for greater submerged land control.

Speaking before over 30 members of the Association of Pacific Island Legislatures, Fitial noted that many of the CNMI's political and economic concerns were related to some of the concerns faced by other U.S. jurisdictions in the Pacific.

He cited the submerged lands issue-specifically, his administration's efforts to secure federal concessions to develop the CNMI's underwater resources.

"We seek parity with U.S. coastal states. U.S. coastal states are at least afforded a portion of economic benefits within the 200-mile exclusive economic zone. Some of the island territories included in APIL could also benefit from the parity sought by the CNMI government," Fitial said.

According to a legal opinion issued by the Attorney General's Office, all coastal states including Alaska and Hawaii have full rights to manage, lease and develop their territorial waters and marine resources extending up to three miles offshore. They also get 27 percent of all federal rents, royalties and revenues paid annually by developers to the coastal state.

Meanwhile, U.S. territories such as Guam, American Samoa and the U.S. Virgin Islands only get qualified rights and interest in submerged land up to three miles, and full right to coral, sand and gravel within that three-mile area.

The federal government has offered the same rights to the Northern Marianas, which currently has no control over its submerged lands.

However, Attorney General Matthew T. Gregory said Friday that the administration would not accept this "flawed" deal because it did not have any economic benefits to the Commonwealth.

Gregory also said that the CNMI could open 902 Covenant negotiations with the federal government to push for a deal closer to that of the coastal states. He recalled that the CNMI had done this to secure an amendment to the Magnuson-Stevens Act, which gave the CNMI full right to all fees, royalties, and enforcement penalties for pelagic fish caught within the islands' 200-mile EEZ.

"All of our sister territories directly benefited from the CNMI insisting on its rights-since they were all listed in the same amendment," Gregory said.

Having common concerns and goals, Pacific Island territories should foster greater unity and solidarity in pursuing political and economic goals, Governor Fitial said.

"Through this organization, we have the potential to accomplish much through unity and collective efforts. Rather than addressing issues alone, as individual island entities, we stand to benefit greatly by supporting each other's worthy goals," he told the APIL delegates.

Back to top 

| 10 Diet Rules That Work | Fear No Man |
| --- | --- |
| Lose 9 Lbs Every 11 Days by Dieting Smarter with this Idiot-Proof Diet. | Discover What The Martial Artists And The Army Don't Want You To Know |

Ads by Google